## Case No. 4,948.

In re FORSYTH et al.

[7 N. B. R. 174.] [1]

District Court, E. D. Michigan. 1873.

---

[1] [Reprinted by permission.]

LONGYEAR, District Judge. First, as to the claim of David Wilson. Section 23 of the bankrupt act [of 1867 (14 Stat. 528)] provides, among other things, as follows: "Any person who, after the approval of this act shall have accepted any preference, having reasonable cause to believe that the same was made or given by the debtor contrary to any provision of this act, shall not prove his debt or claim on account of which the preference was made or given, nor shall he receive any dividend therefrom, until he shall first have surrendered to the assignee all property, money, benefit or advantage received by him under such preference." The issue certified arises under this provision, and the questions presented are:

1. Had Wilson accepted a preference on account of the debt or claim proven by him?

2. Had he, at the time he accepted the same, reasonable cause to believe that the same was made or given by the debtors contrary to any provision of the act?

The bankruptcy proceedings were commenced October twelfth, eighteen hundred and seventy-one. Wilson's claim, as proven, is a stated account for money loaned and interest on the same, amounting to nine hundred and twelve dollars and seventy-six cents, and admitting credits for cash and merchandise received by Wilson on account at sundry times from April twenty-ninth, eighteen hundred and seventy-one, to September twenty-eighth, eighteen hundred and seventy-one, amounting in all to seven hundred and seven dollars and ninety-seven cents, of which amount four hundred and fifty-seven dollars and ninety-seven cents appear by the statement and also by Wilson's admission in his answer, to have been so received during the month of September next before the commencement of the proceedings in bankruptcy.

The issue was submitted upon the petition and answer alone. From these it clearly ap-

pears that the debtors were insolvent during the entire month of September. It needs no argument to show that payments made by an insolvent debtor to any one or more of his creditors necessarily operates as a preference to such creditor or creditors to the extent of the payments so made, and that, therefore, Wilson, by receiving the payments which were made to him during the said month of September, in fact, accepted a preference. The first question presented must, therefore, be answered in the affirmative.

The first consideration presented by the second question is whether the preference so accepted by Wilson was made or given by the debtors contrary to any provisions of the bankrupt act. The debtors, as we have seen, were insolvent when they made the payments in question. It is now well settled, not only by an almost unbroken current of decision in the bankruptcy courts, but by the highest judicial tribunal of the United States,—Toof v. Martin, [13 Wall. (80 U. S.) 40],—that payments so made are to be presumed to have been made with a view on the part of the debtor to give a preference. It needs no argument to show that a preference so made or given by a debtor, is contrary to the express provisions of the act contained in the first clause of section 35. See, also, section 39.

The only remaining consideration under the second question is whether Wilson, when he accepted such preference, had reasonable cause to believe that the same was so made or given by his debtors contrary to the provisions of the act. Wilson, in his answer, admits as follows: "This respondent further admits that when he received said money and merchandise as aforesaid (referring to the money and merchandise received by him on his debt during the month of September) he knew that said George Forsyth was in New York for the purpose of effecting a compromise with the creditors of said firm, and that said Forsyth & Murtha were insolvent and wholly unable to pay their debts." This admission settles the question beyond all doubt. Knowing the facts upon which, as we have seen, the illegality of the preference given him depends, he not only most unquestionably had reasonable cause to believe, but he of course actually knew that such preference was so unlawfully given by his debtors. The answer to the second question must also be in the affirmative.

Wilson not having surrendered to the assignee the property, money, benefit and advantage received by him under such preference, it results that proof of his debt or claim is absolutely prohibited by the clause of section 23, above quoted. The prayer of the petition is, therefore, granted, and Wilson's claim, so proven, must be expunged, and Wilson must pay the costs of this proceeding, to be taxed, including an attorney's fee of fifteen dollars. He appears to have been a sort of confidential clerk of the bankrupts, having the management, to a large extent, of their financial matters, and was thus enabled to take advantage of their other creditors. And having full knowledge of their condition, there is no excuse for his holding on to the advantage he has gained and presenting his claim for proof, and then insisting upon it after it was attacked, in plain violation of law. I therefore consider it but just that he should bear the burden of the costs of these proceedings instead of the estate.

Second. As to the claim of Philip Nettre. The issue certified arises under the same provision of the bankrupt act, (second clause of section 23) and the questions presented are the same as in the case of David Wilson, just disposed of by the first part of this opinion. As before stated the bankruptcy proceedings were commenced October twelfth, eighteen hundred and seventy-one. Nettre's claim, as proven, is for a balance due upon a judgment in his favor against the bankrupts obtained in the circuit court for the county of Wayne, in this state, September twenty-ninth, eighteen hundred and seventy-one. A statement of the account upon which the judgment was obtained accompanied his proof of claim and constituted a part of it, and by which a credit is admitted for money received by Nettre, October fifth, eighteen hundred and seventy-one, one hundred and ninety-one dollars and eighty-five cents. From Nettre's answer, and also from a stipulation in writing, at the hearing, it appears that this one hundred and ninety-one dollars and eighty-five cents was collected by the sheriff upon an execution issued on the aforesaid judgment. It is conceded by the stipulation that the debtors were insolvent; that the debt upon which the judgment was obtained was past due, and that the judgment was obtained by default. Here clearly was a preference of Nettre over the other creditors of the bankrupts to the amount of one hundred and ninety-one dollars and eighty-five cents. The debtors being insolvent, such preference was the necessary result of the facts stated. The first question, therefore, must be answered in the affirmative—that Nettre did accept a preference on account of the debt or claim proven by him.

The first consideration under the second question presented, whether the preference so accepted was contrary to any provision of the bankrupt act, is disposed of by a simple reference to section 39, the portions of which material in this connection are as follows: "That any persons residing and owing debts as aforesaid, who, after the passage of this act, shall," etc., "or, who, being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, shall * * * suffer his property to be taken on legal process, with intent to give a preference to one or more of his creditors * * * shall be deemed to have committed an act of bank-

ruptcy," etc. Here the debtors clearly suffered their property to be taken on execution, and they did so none the less because it was so taken against their will (as it is claimed in Nettre's answer) if such was the fact. A person suffers that to be done which he has the power to prevent and does not prevent. The debtors could have prevented their property being taken on Nettre's execution by going into voluntary bankruptcy, and thus placing their property where all their creditors, including Nettre, could share alike. That it was so suffered with intent to give a preference to Nettre, the debtors being, as we have seen, insolvent at the time, does not admit of discussion, since the decision of the supreme court in the case of Toof v. Martin [supra]. See, also, the remarks upon this subject in the case of Wilson's claims in the first part of this opinion.

It results, therefore, that the preference so accepted by Nettre was contrary to the provision of the act. Had Nettre reasonable cause to believe the preference was of that character? The debtors were merchants. As to them, inability to pay their debts as they became due in the ordinary course of business was insolvency, in the sense in which the term "insolvent" is used in the act in reference to debtors of that class. Toof v. Martin [supra]. The fact of insolvency is expressly conceded in the stipulation. Nettre was apprised of their inability to pay, and of course of their insolvency, by their failure to pay his debt, as to which they made no defense, and it is fair to presume they had none. This was at least sufficient to put him upon inquiry as to their solvency, and being so he must be held chargeable with the knowledge he would have thus obtained, which in this case would have been that his debtors were in fact insolvent. Nettre of course knew that his debtors suffered their property to be taken on the execution on his judgment against them, and that he thereby obtained a preference over their other creditors, which, as we have seen, the law presumes was intended by the debtors, and Nettre must therefore be held to have accepted such preference with reasonable cause to believe that the same was contrary to the provisions of the act above quoted.

A creditor may of course, if he chooses, do as Nettre did, instead of putting his debtor into bankruptcy in the first instance. In doing so, however, he takes the chances of his debtor going into bankruptcy within four months thereafter, either voluntarily or involuntarily, and thus losing the advantage obtained. In such cases, all he has to do is remove the obstacle to proving his claim in the bankruptcy, and to his standing on an equal footing with the other creditors, is simply to surrender such advantage to the assignee, as is provided in the provision of section 23, quoted in the first part of this opinion. Nettre not having so surrendered, his claim was not provable. The prayer of the petition must, therefore, be granted, and Nettre's claim must be expunged accordingly. As the unprovable character of Nettre's claim is founded largely on presumptions, I shall not impose costs in favor of either party as against the other.

Third, as to the claim of Vincent J. Scott. Scott's claim is founded on two promissory notes, both signed "Forsyth & Murtha," one for one thousand dollars, and one for five hundred and sixty dollars. The note for five hundred and sixty dollars only, is objected to. The objection is founded upon the allegation that the note was given in an individual transaction of the bankrupt George Forsyth, and in no manner for the benefit of the firm, and without Murtha's consent; all of which was well known to Scott. The note being signed with the firm name, it was prima facie a valid claim against the estate, and entitled to be paid out of the joint assets; and I think the burden was on the assignee to maintain his charges against it. This he contends he has done by the admissions contained in Scott's answer. The specific charges made by the assignee against this claim is that it "is not an indebtedness of said bankrupts to said Scott; that the note given for said sum of money * * * was signed in the firm name by said George Forsyth, without the knowledge or consent of said Murtha, and that said sum of money thus obtained from said Scott was not in any manner used in and about the business of said Forsyth & Murtha, or for firm purposes, but was obtained by said Forsyth for individual purposes solely, and was by said Forsyth delivered to his brother, James Forsyth, to enable said brother to visit Europe," etc., and charges Scott with knowledge of those facts.

Scott's answer, responsive to these charges, is as follows: "That the disputed claim of five hundred and sixty dollars was paid by him to James Forsyth, on receiving the note of the firm for that amount, to enable said James Forsyth to go to Great Britain, where he had an offer of employment, * * * and that the advance of this money by him at the request of both brothers was merely an act of friendship and to enable the said James Forsyth to accept employment, without which he could not have been enabled to accept it." The answer, it will be observed, fully sustains all the charges made by the assignee, except the one that the firm name was signed to the note by George Forsyth, without the knowledge or consent of Murtha. As to this last named charge, it does not need argument to show that the money having been advanced by Scott on the procuration of the bankrupt, George Forsyth, for a purpose which must have been known to Scott to have been entirely outside of the partnership business of Forsyth & Murtha, the burden of proof was shifted, and it was on Scott to show Murtha's consent to the giving of the note, or that George Forsyth had the right,

as a member of the firm, to bind it for the payment of the money so advanced by Scott to James Forsyth, by reason of some indebtedness or obligation of the firm to the said James. The issue was submitted on the assignee's petition and Scott's answer alone, without any proofs being taken—Murtha's consent, or George Forsyth's right to sign the firm name to the note, nowhere appears. The statement thrown into Scott's answer that the money so advanced by him "was the whole consideration the said James Forsyth received for his interest in the stock of Forsyth & Co., which amounted to several thousand dollars," even if it could be considered as responsive to the charges made by the assignee, and so entitled to be taken as true without proof (which, I think, cannot be,) is of no avail. Its relevancy to the matter in controversy is not made in any manner to appear.

Upon the case submitted, therefore, it must be held that Scott's claim, so far as it is based upon the said note for five hundred dollars, was not a legal claim against the firm of Forsyth & Murtha, and therefore not provable against their joint estate in this court.

The prayer of the petition of the assignee is, therefore, granted, and the claim of Vincent J. Scott must be abated accordingly. A separate order will be signed in each case in accordance with the foregoing opinion.